**Jay BERG, Plaintiff Below, Appellant,**

v.

**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, Defendant Below, Appellee.**

Supreme Court of Delaware.

Submitted: Sept. 24, 1991.
Decided: Oct. 1, 1991.

Kenneth M. Roseman of Ciconte & Roseman, Wilmington, for appellant.

Mason E. Turner, Jr. and Robert H. Sweeny, Jr. of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for appellee.

Before CHRISTIE, C.J., HORSEY and MOORE, JJ.

MOORE, Justice.

We examine the scope of 18 *Del.C.* § 3902, regarding the right of an insured to reformation of an assigned risk insurance policy to provide uninsured/underin-

sured motorist (UM/UIM) coverage limits equal to his liability coverage limits. The Superior Court granted summary judgment to the defendant, American Casualty Company of Reading, Pennsylvania, denying the plaintiff, Jay Berg's, claim for declaratory judgment. The trial court held that because Berg obtained his insurance policy pursuant to the Delaware Assigned Risk, Automobile Insurance Plan, 18 *Del.C.* § 2527, American Casualty was not under a continuing obligation to offer Berg UM/UIM coverage to the extent of his liability coverage limits. We agree and affirm.

I.

The facts are undisputed and were stipulated to the Superior Court. *Berg v. American Casualty Company of Reading, Pennsylvania,* Del.Super., C.A. No. 89C–AP–169, Poppiti, J. (May 22, 1991). On July 29, 1988, Berg obtained a motorcycle insurance policy from American Casualty Company of Reading, Pennsylvania ("American Casualty"). The policy was issued pursuant to the Delaware Assigned Risk, Automobile Insurance Plan ("Assigned Risk Plan"). The policy provided for UM/UIM coverage in the amount of $100,000 per person, $300,000 per accident, and single limit liability insurance in the amount of $300,000 per accident. Berg requested these coverage limits when he filled out the Assigned Risk Plan application. American Casualty never offered Berg any additional UM/UIM coverage in an amount equal to his liability coverage.

On January 10, 1989, while covered under the policy issued by American Casualty, Berg was injured in an accident with William V. Rose, II. Berg settled with Mr. Rose by accepting $100,000 (Mr. Rose's liability coverage limit). Because Berg settled with Mr. Rose for an amount equal to his UM/UIM coverage limit, American Casualty was under no obligation to compen-

sate Berg for any additional damage above and beyond the policy limit.

Berg contended that under Delaware's UM/UIM statute, 18 *Del.C.* § 3902, American Casualty was under a duty to offer him additional UM/UIM coverage to the extent of his liability coverage. Berg originally filed for arbitration pursuant to 21 *Del.C.* § 2118. On April 4, 1989, the arbitration panel found for the plaintiff and defendant filed a notice of appeal in Superior Court. Plaintiff then filed a complaint in Superior Court seeking a declaration that he was entitled to increased UM/UIM coverage under his policy with American Casualty.[1] On June 10, 1991, the Superior Court granted summary judgment to the defendant. On June 13, 1991, Berg perfected his appeal to this Court.

II.

Berg contends that 18 *Del.C.* § 3902 imposes an affirmative duty on American Casualty to offer him additional UM/UIM coverage under his Assigned Risk Plan policy. Section 3902 provides:

Every insurer shall offer to the insured the option to purchase additional coverage for personal injury or death up to a limit of $100,000 per person and $300,000 per accident or $300,000 single limit, but not to exceed the limits for bodily injury liability set forth in the basic policy. Such additional insurance shall include underinsured bodily injury liability coverage.

18 *Del.C.* § 3902(b).

This Court has held that the purpose of section 3902(b) was to assure that each motorist was advised of his right to contract for uninsured motorist coverage.[2] *State Farm Mut. Auto. Ins. Co. v. Arms,* Del.Supr., 477 A.2d 1060, 1064 (citing *O'Hanlon v. Hartford Acc. & Indem. Co.,* D.Del., 522 F.Supp. 332, 334 (1981)). If an insurer fails to offer such additional coverage, the insurer is deemed to have made a

---

1. Berg also requested an award of damages under the terms of his no-fault coverage. The Superior Court denied this request and plaintiff chose not to appeal this issue.

2. Note, under the 1982 amendments to section 3902, underinsured coverage became, by operation of law, simply a form of uninsured coverage. *Home Ins. Co. v. Maldonado,* Del.Supr., 515 A.2d 690, 696 (1986).

continuing offer of such additional coverage which remains open even after an accident occurs. *Id.* The Court, recognizing that insurance agreements are typically non-negotiated contracts of adhesion, held that requiring insurers to obtain a written rejection of the additional coverage mandated by section 3902 imposed a slight burden on the insurer and was necessary to further the compensatory purpose of the section. *Id.* at 1066.

▪ Both *Arms* and *O'Hanlon* dealt with an insurer who issued a policy directly to the insured. However, Berg obtained his insurance through the Assigned Risk Plan. Under the Assigned Risk Plan, an applicant who is unable to procure auto insurance elsewhere files an application with the Insurance Commissioner. In the application, the applicant selects the types and amounts of coverage he desires. Coverage under the Assigned Risk Plan begins at the time the applicant completes the application. The insurance company, however, is unaware that it is the designated carrier until the Insurance Commissioner notifies the insurance company of the assignment. Once notified, the insurance company has fifteen days to issue a policy to the applicant. Thus, the question is whether to impose on an Assigned Risk Plan carrier the same duty to offer additional coverage as is imposed on the typical insurance carrier.

▪ To impose the same burden on Assigned Risk Plan insurers as we imposed on other insurers in *Arms* would not recognize the very different relationship which exists between the insured and insurer under an Assigned Risk Plan policy. An Assigned Risk Plan insurer has no contact with the insured before the policy goes into effect. Indeed, the insurer is not even aware of the insured's existence until the Insurance Commissioner notifies it of the assignment. That circumstance is vastly different from the insured-insurer relationship contemplated by *Arms*.

To apply the holding of *Arms* to an Assigned Risk Plan carrier would lead to the inequitable result that an insured who is involved in an accident after filing an appli-

cation with the Insurance Commissioner, but before the policy is assigned, would have to be offered additional coverage *after* the accident occurred. Such a windfall for the insured certainly was not the intent of the legislature when enacting section 3902, nor of this Court when interpreting section 3902. Moreover, since a policy issued under the Assigned Risk Plan becomes effective upon completion of the application and before an insurance carrier is even assigned the policy, it does not suffer from the "adhesion contract" quality which so concerned this Court in *Arms*. This same conclusion was reached by both the Superior Court and the United States District Court for the District of Delaware. *See Triplett v. Nationwide Mut. Ins. Co.,* Del.Super., C.A. No. 88C–JA–143, Babiarz, J., slip op., 1990 WL 161227 (Sept. 28, 1990); *Walker v. State Farm Mut. Auto. Ins. Co.,* D.Del., 661 F.Supp. 930 (1987), *aff'd,* 845 F.2d 1019 (3d Cir.1988).

Berg contends that to affirm the Superior Court's ruling would deny to all persons insured under the Assigned Risk Plan the right to receive a full and informed offer to purchase the UM/UIM coverage mandated by section 3902. However, this is not true. Berg was given the opportunity to purchase $300,000 in UM/UIM single limit coverage when he completed the Assigned Risk Plan application. He chose not to. In hindsight that decision was unwise, but it is not a basis for reformation under section 3902.

Accordingly, section 3902 does not impose a duty on an Assigned Risk Plan insurer to obtain the insured's written rejection of UM/UIM coverage in an amount equal to the policy's liability coverage when such additional coverage was rejected by the insured, as here, on the Assigned Risk Plan application.

AFFIRMED.